IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LARRY D. KELLAMS, )
        Plaintiff, )
)
)
vs. )   Case No. 13 C 6286
)
CAROLYN W. COLVIN, )
Commissioner of Social Security, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Larry Kellams filed this suit to challenge the Social Security Administration's denial of his claim for Supplemental Security Income (SSI) benefits. Both he and the Commissioner of Social Security have moved for summary judgment. For the reasons stated below, the Court grants Kellams's motion, denies the Commissioner's motion, and remands the case for further consideration.

## Facts

Kellams filed his application for SSI benefits on July 9, 2010, stating that he suffered from a history of heart attack and depression. He alleged that he had been disabled and unemployed since September 2007. Kellams ultimately amended his disability onset date to July 2010. The Social Security Administration denied 'Kellams's application on November 29, 2010 and on reconsideration on April 13, 2011.

Kellams filed a request for a hearing and appeared before an ALJ on June 27, 2012. The ALJ heard testimony from Kellams, his stepfather, his Alcoholics

Anonymous (AA) sponsor, and a vocational expert.  On July 17, 2012, the ALJ issued her decision, finding that Kellams was not disabled.  On July 21, 2013, Kellams submitted records from his stay at Countryside Healthcare Center to the SSA Appeals Council.  Because the records were dated from April 9, 2013 to May 31, 2013, the Appeals Council ruled that they did not affect the decision about whether Kellams was disabled on or before July 17, 2012.  The Appeals Council also declined to review the ALJ's decision, making the ALJ's ruling the Commissioner's final decision.  *See Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

In her decision, the ALJ applied the five-step sequential evaluation process outlined in the applicable Social Security regulations to determine whether an individual is disabled.  *See* 20 C.F.R. § 404.1520(a).  At step one, the ALJ determined that Kellams had not performed substantial gainful activity since his alleged disability onset date.  R. 56.  At step two, she concluded that Kellams had the following impairments qualifying as severe under 20 C.F.R. § 416.920(c):  coronary artery disease with a history of myocardial infarction (commonly known as a heart attack) and stent placement in 2007; alcohol abuse, in remission; hypertension; mild obesity; major depressive order; and anxiety disorder, not otherwise specified.  *Id.*  The ALJ also found that Kellams had a "non-medically determinable" back condition, noting that although he had alleged back pain and exhibited spasm, there was insufficient diagnosis or supportive clinical findings to support a finding that the back condition limited 'Kellams's ability to work.  R. 56-57.

At step three, the ALJ found that Kellams's impairments did not "meet[ ] or medically equal[ ] one of the listed impairments" in 20 C.F.R. § 404, Subpart P,

Appendix 1. R. 57. Addressing Kellams's physical impairments, the ALJ reported that she "considered listing 4.04 for the claimant's coronary artery disease and hypertension" and found that "the medical evidence do[es] not document listing-level severity." *Id.*

As for Kellams's mental impairments, the ALJ concluded that they did "not meet or medically equal the criteria of listings 12.04, 12.06, and 12.09." *Id.* In this regard, the ALJ considered whether "paragraph B" criteria were satisfied. Each of the subsections of Part 12 of Appendix 1, including listings 12.04, 12.06, and 12.09, has a paragraph B requiring the claimant's impairments to result in at least two of the following:

1. marked restriction of activities of daily living; or
2. marked difficulties in maintaining social functioning; or
3. marked difficulties in maintaining concentration, persistence, or pace; or
4. repeated episodes of decompensation, each of extended duration.

According to SSA regulations, a "marked" limitation is one that "seriously interferes with your ability to function independently, appropriately, and effectively" and is greater in degree than a "moderate" or "mild" limitation but less in degree than an "extreme" limitation. 20 C.F.R. § 404, Subpart P, App'x 1. The SSA defines "[r]epeated episodes of decompensation, each of extended duration" as "three episodes within 1 year, or an average of every 4 months, each lasting 2 weeks." *Id.* The ALJ found that Kellams had a mild restriction in his daily living activities and social functioning, moderate difficulties in concentration, persistence, or pace, and found in the record "one to two" episodes of decompensation of extended duration. R. 57-58.

The ALJ next found that the evidence in Kellams's case also failed to meet the

"paragraph C" criteria. Subsections 12.04, 12.06, and 12.09 each contain a paragraph C listing factors an ALJ can consider instead of the paragraph B factors. Paragraph C of subsection 12.04 requires the claimant's impairments to result in one of the following:

1. repeated episodes of decompensation, each of extended duration; or

2. a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Paragraph C of sections 12.06 and 12.09 requires the claimant's disabilities to result in "a complete inability to function independently outside the area of one's home." In this case, the ALJ found that Kellams could "function independently outside of his home" and that "the evidence does not establish the presence of the 'C' criteria." R. 58.

At step 4, the ALJ assessed Kellams's residual functional capacity (RFC). She concluded that Kellams had the RFC "to perform medium work as defined in 20 C.F.R. 416.967(b)" but added the following qualifications:

> [H]e can frequently balance, stoop, kneel, crouch, crawl, and limb ramps and stairs. He can never climb ladders, ropes, and scaffolds; can never work around hazards such as unprotected heights and moving machinery; can tolerate no more than frequent exposure to concentrated amounts of temperature extremes and humidity; can perform only simple, routine, repetitive tasks; can make simple work related decisions; and can tolerate occasional changes to the work setting.

R. 59.

The ALJ began this analysis by reviewing the symptoms that Kellams alleged as well as testimony from his stepfather and his AA sponsor. Kellams testified that he suffered from pain and cramps in his legs and back, which limited his ability to lift and

walk. He testified that his depression and anxiety caused him to be confused and fatigued, in part from difficulty sleeping through the night. Both Kellams's stepfather and AA sponsor testified that Kellams was often confused and slow to accomplish tasks and that he would be unemployable as a result. The ALJ concluded that although Kellams's medically determinable impairments could reasonably cause the symptoms alleged by the three men, the "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not credible to the extent they [were] inconsistent with the above residual functional capacity assessment." R. 60.

To reach this finding, the ALJ made several factual determinations. First, she stated that Kellams's cardiac condition has been stable since the alleged disability onset date. In support of this, the ALJ cited medical records from July 2010, October 2010, March 2011, October 2011, and December 2011, which she asserted revealed "normal" cardiac exams. From this, the ALJ concluded that "the evidence supports that the claimant is not limited from performing all basic work activities and has a residual functional capacity to perform medium work with the identified additional restrictions." *Id.*

Next, the ALJ stated that the RFC took into account Kellams's limitations from hypertension. She noted that "his blood pressure remained normal and controlled with medications" and that "the clinical evidence supports the conclusion that [Kellams's] hypertension would not prevent him from performing less than the full range of medium work with the identified restrictions." *Id.* The ALJ also noted that she considered the effects of Kellams's mild obesity in limiting him to medium work but that his obesity did not impose "any further restrictions than those already noted." R. 61.

The ALJ also cited a report from a consultative examination by Mahesh Shah, M.D. Following the examination, Dr. Shah found that Kellams's cardiac exam was normal, he exhibited largely normal findings on respiratory, musculoskeletal, extremities, and neurological examinations, and he demonstrated the ability to "heel and toe" walk. R. 519-22. The ALJ concluded that this supported her finding that Kellams could perform medium work.

The ALJ also evaluated Kellams's mental health history. She noted that Kellams had been hospitalized from June 11 to June 21, 2010 where he exhibited, among other things, depressed mood and suicidal ideation. R. 61. She went on to state that Kellams's depression had later stabilized, specifically citing exams from March 2011 and May 2011. *Id.*

The ALJ also referenced Kellams's Global Assessment of Functioning (GAF) score range of 20-50. *Id.* She noted that this range "indicates an inability to function in almost all areas to serious impairment in social, occupational, or school functioning." R. 61 n.2 (referencing American Psychiatric Association' *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. rev. 1994)). The ALJ stated, however, that these scores represent "a snapshot of a person's perceived abilities at a particular moment and must be viewed in context" and "a general characterization of one's mental health, not a rating of his ability to work." *Id.*

Next, the ALJ summarized psychiatric examinations of Kellams from May 2011 to November 2011. She noted that Kellams exhibited "panic attacks, crying spells, and anxiety" during a May 2011 exam, but she concluded that notes of "good sleep and energy" during an August 2011 exam suggested "gradual improvement." R. 61. The

ALJ also made note of a reference to "some anxiety, and poor sleep and energy" during a September exam, but she found that a reference to "good mood, sleep, appetite, and energy" during a November 2011 exam suggested that Kellams was "doing well." R. 61-62. The ALJ also noted an October 2011 physical that "revealed normal mental status exam, negative depression screening, ability to perform usual activities, normal sleep and energy level, and only some fatigue." R 62, 768. From all of this, the ALJ concluded that the evidence supported the limitations she described in her RFC determination. R. 62.

The ALJ went on to summarize a psychological consultative examination conducted by Herman Langer, M.D. During the exam, Dr. Langer had Kellams perform a series of tests in order to evaluate his mental capacity. R. 516. From these tests, the ALJ concluded that Kellams had "difficulty with the interpretation of proverbs" but that his judgment, insight, and memory were normal. R. 62.

The ALJ also reviewed evidence of Kellams's history of alcohol abuse. She found that Kellams had undergone rehabilitation and had maintained sobriety since 2011. From this, she concluded that Kellams's alcohol abuse was in remission and not material. *Id.*

Next, the ALJ noted that despite his fatigue, Kellams remained "objectively cognitively intact." She cited to a November 2012 exam in which it was reported that Kellams was sleeping six to eight hours per day. R. 63. The ALJ concluded that this "reflects improvements of past complaints of fatigue." *Id.* The ALJ also concluded that Kellams's "mental health improved with sobriety" and noted that "there is no objective evidence or diagnosis of an organic mental disorder." *Id.*

7

The ALJ also described her analysis of Kellams's credibility. She stated that the record showed that Kellams had "omitted mentioning alcohol use" during a consultative exam and that he had been "untruthful about suicidal ideation and mental health symptoms in the past." *Id.* From this, the ALJ concluded that the "evidence casts doubt upon [Kellams's] overall credibility." *Id.* The ALJ further stated that "the objective evidence fails to support the limitations and decline in functioning" described by Kellams's stepfather and his AA sponsor at the hearing. *Id.*

In addition to these findings at step four, the ALJ also discussed the weight she assigned to various medical opinions in the record regarding Kellams's physical and mental limitations. First, the ALJ stated that she gave "little weight to the opinion of physician assistant LaTanya Morris," reasoning that Kellams's "clinical exams and review of the systems fail to suggest greater limitation than determined herein." R. 64. She also accorded "little weight to Dr. Mathews's May 2011 statement that the claimant is disabled," noting that this opinion lacked "function-by-function analysis" and that the issue of disability is reserved to the SSA Commissioner. *Id*; *see* 20 C.F.R. § 404.1427(e). The Court notes that the record reflects that Dr. Mathews met with Kellams at least seven times from 2010 to 2011. R. 714-19.

The ALJ gave "great weight to the State agency psychological consultants' mental assessments" because, she stated, they were "consistent with the record as a whole." R. 64. She also "agree[d] with the State agency medical consultants' physical assessments of medium residual functional capacity" but noted that she accorded them limited weight because their assessments did not include the additional limitations identified in her RFC. R. 64-65.

8

Finally, the ALJ afforded little weight to an RFC assessment by Chukwuemka Ezike, M.D. and a mental impairment questionnaire from Fazal Ahmed, M.D. because, the ALJ said, they were "inconsistent with the longitudinal record which shows overall improvement." R. 65. The record reflects that Dr. Ezike met with Kellams on at least ten occasions from 2007 to 2011, R. 326-38, 342, 720, 751, 756, 761, and that Dr. Ahmed met with Kellams at least three times from March 2010 to January 2011. R. 344-45, 686-87.

After discussing these points, the ALJ found that although Kellams was unable to perform any of his past relevant work as a garbage man with the RFC she had assigned to him, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. 65. The ALJ considered the RFC assessment, as well as 'Kellams's age, education and work experience and the Medical–Vocational Guidelines described in 20 C.F.R. § 404, Subpart P, Appendix 2. The ALJ also drew on the testimony of the vocational expert at the hearing, who testified that, given the RFC the ALJ had described, Kellams could work as a dishwasher, a hand packer or a bagger. R. 66. Relying on that evidence, the ALJ concluded that Kellams "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and thus was not disabled. *Id.*

## Discussion

A reviewing court should "uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence." *Bates v. Colvin,* 736 F.3d 1093, 1097 (7th Cir. 2013). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Pepper v. Colvin,* 712 F.3d 351, 361–62 (7th Cir. 2013). A court must take care not to "reweigh the evidence or substitute [its] own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review." *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012). But "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). And in doing so, the ALJ "must provide an accurate and logical bridge between the evidence and the conclusion." *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008).

On appeal, Kellams contends that the ALJ erred by improperly discounting the opinions of his treating physicians and making improper findings regarding Kellams's credibility. Kellams further asserts that the SSA Appeals Council was incorrect to dismiss evidence that he produced after the ALJ's decision.

**1.     Consideration of medical opinions**

Kellams argues that the ALJ erred by improperly discounting the opinions of his treating physicians regarding his abilities without providing a sufficient rationale. The Court agrees.

Kellams first points to the opinion of Dr. Ezike. Dr. Ezike would have limited Kellams to light work in his residual functional capacity assessment. R. 721. Because Kellams is of advanced age, has a high school education and only unskilled work experience, crediting Dr. Ezike's RFC assessment would have required a finding of disability under SSA regulations. 20 C.F.R. § 404.1569; Appendix 2 to Subpart P of Part 404 – Medical-Vocational Guidelines, Rule 202.04.

The ALJ discredited Dr. Ezike's RFC assessment as "inconsistent with the longitudinal record." In support of this conclusion, the ALJ stated that many of Kellams's conditions were "stable" and that his anxiety had "improved" and summarily cited to 263 pages of medical records. The ALJ did not, however, point out with specificity what aspects of the record were inconsistent with Dr. Ezike's opinion. Rather, she stated only that Kellams's record showed "overall improvement." This is not the "accurate and logical bridge" the ALJ is required to build between the evidence and her conclusions. Quite simply, it is impossible to know what the ALJ thought the inconsistencies were.

This is especially problematic because Dr. Ezike was a treating physician of Kellams. Dr. Ezike had examined Kellams seven times between his heart attack and the RFC assessment, and he continued to see Kellams after that. Under applicable SSA regulations, a treating doctor's opinion receives controlling weight if it is "well-supported" and "not inconsistent with the other substantial evidence" in the record, 20 C.F.R. § 404.1527(d)(2), and an ALJ "must offer good reasons for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (internal quotation marks omitted).

The Court also notes that the ALJ ultimately credited Dr. Reynaldo Gotanco's RFC assessment that was less favorable to Kellams, R. 64 ("I agree with the State agency medical consultants' physical assessments of medium residual functional capacity"), despite the fact that Dr. Gotanco had never examined Kellams. R. 508-13. In *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011), the court emphasized that "[w]hen an ALJ decides to favor another medical professional's opinion over that of a

treating physician, the ALJ must provide an account of what value the treating physician's opinion merits." In this case the ALJ failed to do so. Her determination lacked explanation and was far too conclusory.

The ALJ similarly discredited the opinion of Kellams's treating psychiatrist, Dr. Ahmed, who opined that Kellams's impairments would cause him to be absent from work more than three times a month. R. 724. Had the ALJ credited Dr. Ahmed's opinion, this would have led to a finding of disability. Because Kellams's impairments prevented him from performing his past work, applicable regulations called for a finding of disability unless the evidence "demonstrate[d] that other work exists in significant numbers in the national economy that [the claimant] can do." 20 C.F.R. § 404.1560(c)(2). The ALJ relied on the testimony of a vocational expert to supply this evidence. R. 66. The vocational expert also testified, however, that three or more absences per month would not be tolerated in competitive employment. R. 113. Thus if the ALJ had credited Dr. Ahmed's opinion, it would have undercut the proposition that work existed that Kellams was capable of doing.

In the same brief paragraph in which the ALJ discredited Dr. Ezike, the ALJ discredited Dr. Ahmed's opinion as inconsistent with the longitudinal record, which the ALJ found shows "overall improvement." R. 65. In making this finding, the ALJ stated merely that Kellams's depression was stable and that his anxiety had improved, citing generally to the same 263 pages of records. *Id.* The ALJ failed to identify where the inconsistencies were, and she provided no further rationale for affording "little weight" to Dr. Ahmed's opinion. By contrast, the ALJ assigned "great weight" to a consultative psychological assessment performed by Lionel Hudspeth, a psychologist. R. 64. The

12

absence of an explanation, however, makes it impossible to follow the ALJ's reasoning for favoring a consultative assessment over a treating doctor's opinion.

The Commissioner contends that the ALJ was not required to provide additional explanation of how she found the treating doctors' medical opinions inconsistent with the record because she had already laid out Kellams's medical history. *See* Def.'s Mem. at 3. This argument falls short, for two reasons. First, as the Court has discussed, providing a summary of the ALJ's view of Kellams's medical history and then attaching a conclusion that the opinions of the treating physicians are inconsistent with that view falls short of the "accurate and logical bridge" an ALJ is required to build. Second, as detailed below, the ALJ engaged in impermissible "cherry-picking" of the evidence in articulating her view of the record. *Bates*, 736 F.3d at 1099 (an ALJ cannot rely only on the evidence that supports her opinion).

With regard to Kellams's physical medical history, the ALJ did not give proper consideration to the opinion of physician's assistant LaTanya Morris, who opined that Kellams is unable to "sustain work that would require frequent standing, walking, and lifting in a competitive environment."[1] R. at 777. Though the ALJ correctly noted that P.A. Morris's views do not establish a medically determinable impairment, SSA rulings are clear that opinions from medical sources such as physician assistants are "important and should be evaluated on key issues such as *impairment severity and functional effects*." SSR 06-03p (emphasis added) (noting that these types of sources

---

[1] Although Kellams argues that LaVerne Barnes, M.D. "signed off" on Morris's opinion, thus rendering it a medical opinion by the physician, the facts suggest otherwise. Whereas Kellams's progress notes from Healthy People Family Care are electronically signed by Barnes, R. 772, 776, Morris's opinion was only stamped with Barnes's name. R. 777.

"have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians" because of an emphasis on containing medical costs). The ALJ provided no appropriate explanation for why she discounted Morris's functional assessment of Kellams's abilities, which was contrary to the ALJ's finding of overall improvement in Kellams's medical condition.

Further, in outlining Kellams's physical medical history, the ALJ offered insufficient analysis regarding the opinion of Dr. Mathews. In addressing Kellams's medically determinable impairments, the ALJ found that Kellams's back condition could not be medically determined and thus "cannot be found to cause limitations." R. 57. This would seem to fly in the face of Dr. Mathews's indication of back pain and muscular spasm on May 14, 2011. R. 718. The ALJ was correct to note that a finding of disability is a legal conclusion reserved to the SSA Commissioner under 20 C.F.R. § 404.1427. This, however, would warrant disregarding only Dr. Mathews's notation that Kellams was disabled. It is not an explanation for giving "little weight" to Mathews's medical findings generally, including his notations regarding Kellams's back condition. R. 64. Those findings by Dr. Mathews militated against the ALJ's finding of overall improvement in Kellams's medical condition, so the ALJ was required to provide sound reasoning for rejecting the findings.

With regard to Kellams's mental functioning, several aspects of Kellams's record were contrary to the ALJ's conclusion that the record showed overall improvement. In evaluating Kellams's mental impairments, the ALJ summarized findings from several exams. The ALJ noted that during a May 2011 exam, Kellams reported panic attacks, crying spells and anxiety. R. 61. She then asserted that he showed gradual

improvement, as indicated by the fact that he reported good sleep and energy in the August 2011 exam. *Id.* During this exam, however, Kellams reported that he had "good and bad days" and that his energy was "poor." R. 739. Next, the ALJ noted some of the issues in Kellams's September 2011 exam, where Kellams reported that he was only getting about "2 hours of sleep" and that "his anxiety [was] bad some days." R. 734. The ALJ then went on to describe the November 2011 exam, noting that it showed that Kellams had "good mood, sleep, appetite, and energy during the day." R. 62.

The ALJ concluded from this evidence that Kellams's symptoms were improving. *Id.* That conclusion was unwarranted. The ALJ did not simply disregard evidence that did not support her conclusion; in addition, her analysis was flawed. The notes show that although Kellams reported that he occasionally experienced relief from some of his symptoms, he nevertheless continued to experience anxiety and fatigue. Rather than demonstrating "overall improvement," the record supports a finding that Kellams's mental health and function were, at best, fluctuating. This was consistent with Dr. Ahmed's finding that Kellams would be absent from work at least three days per month.

Further, the ALJ's conclusion that Kellams's occasional relief from symptoms is an indication that he is no longer limited by his mental health is indicative of "an all-too-common misunderstanding of mental illness" that the Seventh Circuit has criticized. *Scott*, 647 F.3d at 740. In *Scott*, the claimant suffered from mental illness. *Id.* at 736. Her psychiatrist noted that although responding well to treatment, she was nonetheless markedly limited in her ability to work and would miss three days of work per month. *Id.* at 739. The ALJ in *Scott* discredited this assessment as internally inconsistent. Disagreeing with this analysis, the court reasoned that "[t]here can be a great distance

between a patient who responds to treatment and one who is able to enter the work force." *Id.* In vacating the denial of benefits, the court also noted that "any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated." *Id.* at 740. *See also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition.").

Similarly, in Kellams's case, the occurrence of good days among the bad days does not necessarily mean he is free from impairment. The records of Kellams's mental health treatment suggest that he is still affected by his mental illness in a way that is significant to his functional capacity. This weighs against a finding of overall improvement. Indeed, it is consistent with an opinion that Kellams may miss three or more days of work per month.

The ALJ also provided insufficient analysis justifying her disregard of Kellams's GAF scores. The ALJ noted that Kellams's GAF scores as noted by his treatment psychiatrist ranged from 20 to 50, which, as the ALJ explained, "indicated an inability to function in almost all areas to serious impairment in social, occupational, or school functioning." R. 61 n.2. The ALJ wrote off the significance of these scores, however, as merely "snapshot[s] of a person's perceived abilities at a particular moment in time" and "general characterization[s] of one's mental health, not a rating of his ability to work." *Id.* This is not a sufficient basis to disregard this aspect of the treating psychiatrist's findings. As Kellams points out, each report in which he is described as "stable" is similarly a snapshot of his perceived abilities at the time, yet the ALJ had no issue

referencing those facts in support of her conclusions. The ALJ did not offer any rationale for crediting one type of assessment over the other.

The Commissioner contends that the Seventh Circuit's decision in *Denton v. Astrue*, 596 F.3d 419 (7th Cir. 2010), relieves the ALJ of basing her decision on GAF scores. Although the court in *Denton* made it clear that the law does not "require an ALJ to determine the extent of an individual's disability based *entirely* on his GAF score," *id.* at 424 (emphasis added), the court's decision does not suggest that an ALJ may summarily discredit these indicators without sufficient rationale. And in *Denton*, in contrast to this case, the GAF scores that the treating doctor assigned were inconsistent with his narrative findings. *Id.* The ALJ in Kellams's case did not offer sufficient reasoning for essentially setting aside 'his GAF scores, which were consistent with his doctor's overall opinions. Further, as in *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014), the problem is not merely "the failure to individually weigh the low GAF scores but a larger general tendency to ignore or discount evidence favorable to [claimant's] claim."

In sum, the ALJ did not offer a sufficient rationale for discrediting the opinions of Drs. Ezike and Ahmed as "inconsistent with the longitudinal record." The ALJ failed to identify any particular inconsistencies that led her to this conclusion, and her general statement that the longitudinal record showed "overall improvement" was based on an impermissibly selective and unexplained reading of the evidence.

Because these errors warrant a remand, the Court need not reach the remaining issues presented by Kellams. The Court wishes to make clear, however, that it has found that Drs. Ezike, Ahmed, and Mathews are treating physicians of Kellams. Their

findings and opinions are to be evaluated as such on remand.

**2.    New evidence**

Kellams also contends that the 2013 records from Countryside Healthcare Center are material to the issue of whether he was disabled through the date of the ALJ's opinion and that the SSA erred by declining to consider those records. Rejection of material evidence requires remand to the Commissioner. *See* 42 U.S.C. § 405. Because, however, the Court has already concluded that the ALJ's decision must be remanded for further proceedings, the Court need not consider whether the previous failure to consider Kellams's new evidence would merit remand on its own. "Any additional relevant evidence [he] desires to submit . . . should be considered on remand." *Campbell v. Shalala,* 988 F.2d 741, 745 (7th Cir. 1993) (ordering consideration of new evidence on remand for lack of substantial evidence supporting ALJ's decision, even though court concluded in dicta that new evidence would not itself justify remand).

## Conclusion

For the foregoing reasons, the Court grants plaintiff's motion for summary judgment [dkt. no. 14] and denies the Commissioner's motion [dkt. no. 22]. The Clerk is directed to enter judgment remanding the case to the Social Security Administration for further proceedings consistent with this decision.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 22, 2014

18